MARY GRUBER, petitioner-appellant,

*v.*

EUGENE GRUBER, defendant-respondent.

[Decided February 3d, 1947.]

*Messrs. Ward & McGinnis (Mr. Peter J. McGinnis,* of counsel), for the petitioner-appellant.

*Messrs. Chandless, Weller & Kramer (Mr. Julius E. Kramer,* of counsel), for the defendant-respondent.

The opinion of the court was delivered by

WELLS, J.

This is an appeal of the wife from a decree of the Court of Chancery, dated June 11th, 1946, advised by Advisory Master Campbell, dismissing her petition for divorce from her husband on the ground of his extreme cruelty, and ordering that her counsel be paid by her husband a counsel

fee of $100. The petition was filed September 28th, 1945, and alleges that the parties were married on June 15th, 1935, that there were two boys born of the marriage, ages nine and five, respectively.

The wife charges that ever since their marriage her husband has been guilty of extreme cruelty toward her. The petition alleges that, commencing with the year 1936, the husband became abusive and called her opprobrious names in the presence of her children; that during the years 1943 to 1945 he conducted himself in a cruel and inhuman manner by forcibly and physically imposing upon her so frequently and to such an extent as to greatly undermine her physical and nervous systems. In support of the allegations of her petition, the wife testified of assaults and batteries of her husband upon her and of threats of bodily harm to her, vituperations, accusations of infidelity in the presence of the children and others and other charges too numerous to mention. These various charges are alleged to have occurred during the months of August, 1941, June, 1943, May and July, 1944. As a result of the husband's continued ill-treatment of his wife and abusive conduct toward her, she claims her life was rendered one of utter wretchedness and misery, and her health became greatly impaired, and she was put in fear of her life and safety.

It would serve no useful purpose to recite in detail the testimony of the parties in support and in denial of the wife's petition. They are fully discussed in conclusions filed by the advisory master marked "not to be printed."

The last act of cruelty complained of occurred in July, 1944, upon the wife's arrival home from a birthday party at two o'clock in the morning with her sister. She said that the husband threatened her with a butcher knife and severely choked her; that she left his bed at that time, and since March, 1944, they had not sexually cohabited, except on one occasion in October, 1944, when he took advantage of her while she was drunk and unconscious of the act until its completion. She did not leave the husband's home until November 5th, 1945, which was several weeks after she filed her petition. It is to be noted that, despite the wife's alleged

fear of her husband, she continued to live in the same house with him for a period of sixteen months after the occurrence of the last alleged act of cruelty.

If the acts complained of had actually occurred, and the wife had been in fear of her life, it seems unlikely that she would have continued to remain in the same danger zone where she says she had suffered so many wounds. Her explanation for this is that she could not sooner obtain another place to live. In February, 1944, while they were living at Fairlawn, New Jersey, the wife obtained a position as a telephone operator in Paterson, and yet the wife admits that the husband adequately supported his family and maintained the home, and she gave no good reason for having obtained employment.

It may be helpful to briefly call attention to certain parts of the wife's testimony given on cross-examination. She admitted having thrown a plate at the husband inflicting a permanent scar on his temple; that when her husband reduced her household allowance to $25 weekly because she had refused to account to him for her expenditures, she threw the money in his face; that arguments had frequently arisen because he objected to her visiting taverns, returning home at two and three o'clock in the morning and refusing to account for her whereabouts or companions. She admitted having a struggle with her husband in October, 1945, to gain possession of two letters written in August, 1944, and addressed to "Mrs. Mary Gruber, P. O. Box 2464, Paterson, New Jersey." The envelopes of these letters were postmarked "Camp Van Dorn, Miss." The husband testified he found these letters in her closet. They were shown to her on cross-examination. She denied having received them or knowing Pfc. Harold White, the writer. The contents of these letters, if accepted as true, bespoke an undue intimacy between the wife and the writer. The wife's solicitor objected to the introduction of the letters in evidence, on the ground substantially, that the truth of their contents standing alone, could not be resolved against her. The letters were received in evidence, and the advisory master, speaking of the propriety of their admission, said in his conclusions:

"The rule of law applicable thereto is cited in *Cartan* v. *Cartan* (*Court of Errors and Appeals*), *93 N. J. Eq. 175; 115 Atl. Rep. 353,* citing *State* v. *MacFarland* (*Court of Errors and Appeals*), *83 N. J. Law 474; 83 Atl. Rep. 993;* 'Letters written to a person, though evidence against him for some purposes, are not evidence of the truth of their contents unless besides the mere possession of the letters there is testimony from which acquiescence in the truth of their contents can be inferred.' "

The advisory master said that it was true that there was no testimony, other than that of the husband, that the wife ever had possession of the letters, that is, that he found them in her closet, nor was there testimony from which her acquiescence in the truth of their contents could be inferred, but, said he, the fact that she admitted having struggled with the husband to gain possession of them was a sufficient manifestation of conscious guilt to bind her to the truth of their contents.

Inasmuch as the advisory master, as shown by the recital in the decree, did not base his findings on these letters, we do not think it necessary for us to pass upon the question here. Conceding, without deciding, that the letters were improperly admitted for the purpose stated, we think no harmful error resulted to the wife therefrom.

The wife's sister, Mrs. Edith White, was the wife's only witness. She corroborated the wife's testimony concerning the husband's alleged acts of cruelty. She admitted having been petitioner's companion on the occasions when the latter had stayed out until early morning; that the wife and she had frequently visited taverns and drunk intoxicants late at night; that the arguments between the wife and the husband had arisen because the husband disapproved of the late hours kept by the wife and of her association with other men.

The advisory master placed little faith in the sister's testimony, which, he thought, was colored by her interest in the wife, and that her general demeanor and pronounced hostility toward the husband detracted materially from the weight of her testimony.

In presenting his defense, the husband admitted that during the last five years of their married life he and she had frequently engaged in serious arguments; that all of these arguments ensued when he objected to her late hours and her refusal to tell him where she had been; because she went out with and visited taverns late at night with her sister, Mrs. White. He categorically denied all of her charges with one exception; he admitted having slapped her, during the course of jesting, in August, 1941, in the presence of her brother. He denies that Mrs. White was in the home during any of the arguments testified to by the wife. He admitted calling his wife names but denied using the epithets testified to by her and her sister.

Mrs. Alice Leesman, a next door neighbor of the parties, was called as a witness by the husband. She stated that up to the time the wife left the home she, Mrs. Leesman, was a daily visitor there; that she is friendly with both parties; that the wife had confided in her from time to time. She declared that, although the wife had told her that she and her husband quarreled constantly, the wife had never complained about the husband's beating her or calling her vile and indecent names; that she had never observed any evidences of physical violence on the wife. She had told Mrs. Leesman that she and her husband did not get along harmoniously; that, despite her husband's objection, she proposed to obtain employment in order that she might be able to take care of herself; that she intended leaving her husband when she had saved enough money. Mrs. Leesman had observed the wife returning to her home at two and three o'clock in the morning.

The advisory master said he "was very doubtful that any of the acts of physical violence and threats on the wife's life testified to by the wife and her sister actually occurred." Nor did he find anything in the proofs to indicate that her safety or health was endangered. The doctor who treated the wife was not produced in court, nor was his absence explained. While the advisory master thought the husband did resort to the use of emphatic and reprehensible language in reproaching his wife for her conduct, he said it was apparent

that the husband was not suspicious of the wife's conduct without cause, and that her admissions, as well as those of her sister, plainly indicated that the husband's conduct, whatever it may have been was provoked by the wife; that she persisted in her course of conduct against his wishes and thus called down upon herself the treatment of which she complained.

We have carefully examined the proofs and briefs of counsel and have reached the conclusion that the wife has not sustained the burden resting upon her to establish the truth of the allegations in her petition, and is not entitled to the relief for which she prayed.

The wife also appeals from that part of the decree wherein her solicitors were granted a counsel fee of $100, claiming that it was grossly insufficient for the services rendered by her solicitors.

In view of the fact that there were no temporary counsel fees requested or allowed in the court below, and considering the time taken in the preparation and trial of the case, we are inclined to think the counsel fees were too low and that the sum of $200 should be allowed.

With this modification, the decree below dismissing the wife's petition will be affirmed.

*For reversal*—None.